UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAMENA VORACHEK,

        Plaintiff,

v.

SECURITY FEDERAL CREDIT UNION,

        Defendants.
_____/

Case No. 07-15090

Hon. Victoria A. Roberts

## OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I.   INTRODUCTION**

This matter is before the Court on Defendant's Motion for Summary Judgment [Doc. 20]. Plaintiff filed a Response. For the reasons stated, the Court **GRANTS** the Motion in part and **DENIES** in part.

**II.   BACKGROUND**

Plaintiff Ramena Vorachek brings this action against her former employer, Defendant Security Federal Credit Union ("SFCU"), under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL 37.1101 *et seq.* She alleges she was terminated due to her disability and in retaliation for filing a complaint of workplace harassment, in violation of the ADA and the PWDCRA. SFCU says it terminated Plaintiff for violating its attendance policy.

1

Plaintiff is a 40-year old woman, who suffers from chronic fatigue, fibromyalgia, and the Epstein Barr virus. SFCU hired her on April 5, 1989 as a teller; she last held the position of Head Member Loan Service Department. During her employment, Plaintiff was a member of the Office and Professional Employees International Union, Local 393, AFL-CIO ("Union"). She was subject to a collective bargaining agreement ("CBA") and an employee handbook, both of which contained policies regarding attendance, leave time and progressive discipline. Based on Plaintiff's seniority, she was entitled to 20 paid vacation days, five paid excused absence days, and seven paid advance notification days, for a total of 32 paid absences per calender year. She was also entitled to take unpaid absences.

Plaintiff called in sick on June 5, 6, and 7, 2006. Because Plaintiff had used all of her paid absences and FMLA leave time, she was told that she needed a doctor's note for all three days. SFCU says the doctor's notes were requested to determine whether the absences were subject to discipline under the employee handbook. Under SFCU's attendance policy, unpaid absences are not counted for purposes of progressive discipline if (1) taken pursuant to the Family Medical Leave Act ("FMLA"), or (2) the employee has a doctor's note to cover the absence or illness. Unpaid absences for which the employee has not provided a doctor's note are subject to this progressive discipline policy:

   1. First absence   Warning Level 1
   2. Second absence  Warning Level 2
   3. Third absence   Reprimand
   4. Fourth absence  Two week unpaid suspension
   5. Fifth absence   Termination

2

The progressive discipline policy has a redemption policy which limits progressive discipline after the passage of specified time periods without an absence:

| | |
|---|---|
| 30 work days without an absence: | Remain at current step |
| 60 work days without an absence: | Back one step |
| 130 work days without an absence: | Back two steps |
| 260 work days without an absence: | Clear |

Plaintiff returned to work on June 8, 2006, without a doctor's note for any of the three days. SFCU treated each absence as a separate action and counted it as an unpaid absence for purposes of progressive discipline under the attendance policy.

Plaintiff's 2006 absences up to that point were:

| Start Date | End Date | Duration | Designation |
|---|---|---|---|
| 1/6/06 | 1/6/06 | 1 day | Vacation |
| 1/9/06 | 1/10//06 | 2 days | Excused Absence |
| 1/17/06 | 1/17/06 | 1 day | Unpaid |
| 1/19/06 | 2/2/06 | 11 days | Disciplinary Layoff |
| 2/9/06 | 2/9/06 | 1 day | Excused Absence |
| 2/10/06 | 2/10/06 | 1 day | Excused Absence |
| 2/13/06 | 2/13/06 | 1 day | Excused Absence |
| 2/27/06 | 2/27/06 | 1 day | Unpaid (Doc. Note) |
| 3/6/06 | 3/6/06 | 1 day | Advance Notific. |
| 3/13/06 | 3/13/06 | 1 day | Advance Notific. |
| 3/24/06 | 3/24/06 | 1 day | Advance Notific. |
| 4/3/06 | 4/4/06 | 2 days | Advance Notific. |
| 4/7/06 | 4/7/06 | 1 day | Unpaid (Doc. Note) |
| 5/1/06 | 5/2/06 | 2 days | Advance Notific. |

On June 14, 2006, SFCU terminated Plaintiff's employment under the progressive discipline policy, because those three additional unpaid absences caused her to accrue five unpaid absences[1] unsupported by a doctor's note. Plaintiff says she

---

[1] Plaintiff's last unpaid absence, unsupported by a doctor's note, occurred on January 17, 2006 and resulted in a two week unpaid suspension, the fourth level of discipline. Because her next unpaid, unsupported absence did not occur until June 5,

3

was terminated just three weeks after she complained that co-workers subjected her to workplace harassment because of her disability.  In particular, on May 12, 2006, Plaintiff complained to Jay Yax of Human Resources, that three co-workers conspired to purposely call in sick on May 3, 2006 as revenge for Plaintiff's absence on May 1 and 2, 2006 due to illness.  During the meeting, Yax allegedly informed Plaintiff that her poor attendance had a negative effect on employee morale and could result in her termination.

Plaintiff filed a formal written complaint on May 22, 2006.  In the complaint, Plaintiff claimed the three co-workers admitted to her and two witnesses that they planned their absences because she had called in the previous two days.  Plaintiff alleged their actions aggravated her illness and disrupted branch operations.  Yax conducted an investigation and was unable to verify that the three employees planned to call in sick on the same day.  SFCU says no one had any animus towards Plaintiff because of her complaint.

Plaintiff filed a union grievance to challenge her termination.  After review, the Union withdrew the grievance and elected not to arbitrate.  Next, Plaintiff filed a claim with the National Labor Relations Board, which was unsuccessful.  Plaintiff then filed this action.  SFCU moves the Court for summary judgment.

## III.     STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

2006 (139 days), she was "backed up" two steps under the redemption policy.

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

IV.   ANALYSIS

   A.   Discrimination

The ADA prohibits discrimination by a covered entity "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The PWDCRA prohibits an employer from discharging or otherwise discriminating against a person with respect to employment "because of a disability . . . that is unrelated to the individual's ability to perform the duties of a particular job or position." M.C.L. 37.1202(1)(b).

Federal courts note that analysis of claims under the PWDCRA largely parallels analysis under the ADA. *Hamlin v Flint Charter Twp*, 942 F. Supp. 1129, 1136 (E.D. Mich. 1996); *Fritz v Mascotech Automotive Systems Group, Inc,* 914 F. Supp. 1481

5

(E.D. Mich. 1996). Similarly, Michigan courts hold that the *prima facie* elements and burden-shifting analyses applicable to the Michigan civil rights statutes and federal civil rights statutes are similar, *Kerns v. Dura Mechanical Components, Inc.,* 242 Mich. App. 1, 618 N.W.2d 56, 62 (Mich. Ct. App. 2000), and that resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim. *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 n. 3 (6th Cir. 1998). Therefore, the Court may consider analogous federal precedents decided under the ADA in determining the law applicable to Plaintiff's state law claim.

A *prima facie* case of disability discrimination under the ADA or the PWDCRA requires that a plaintiff show: "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007) (citing *Monette*, 90 F.3d at 1186).

A claim of disability discrimination under the ADA or the PWDCRA can be established by either direct evidence or circumstantial evidence. *Monette*, 90 F.3d at 1178. Where a plaintiff seeks to establish a *prima facie* case by means of circumstantial evidence, the Court applies the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Id.* at 364. The plaintiff's burden at the summary judgment stage "is merely to present evidence from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action under circumstances which give rise to an inference of

6

unlawful discrimination." *Id.*

It is well settled that not every physical or mental impairment constitutes a disability under the specific parameters of the ADA. *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 195, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002); *Bryson v. Regis Corp.*, 498 F.3d 561, 575 (6th Cir. 2007). The ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C); see also MCL 37.1103(d)(i)(A). Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). If [an employee's] condition does not meet one of these categories even if he was terminated because of some medical condition, he is not disabled within the meaning of the Act. *Nese v. Julian Nordic Constr. Co.*, 405 F.3d 638, 641 (7th Cir. 2005).

SFCU argues that notwithstanding Plaintiff's physical impairments, her condition did not substantially limit a major life activity, and thus did not rise to the level of a "disability" under the ADA or PWDCRA. Plaintiff produced evidence that she suffers from Epstein Barr virus, chronic fatigue syndrome and fibromyalgia, and that her condition substantially limits her ability to sit or stand for more than short periods of time. Plaintiff also produced evidence that the Social Security Administration ("SSA") deemed her disabled since June 14, 2006; the SSA found she had mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and unpredictable

limitations on her ability to work a full work day. The SSA also found that Plaintiff was unable to perform any past relevant work and there were no significant number of jobs in the national economy that she could perform. Therefore, whether Plaintiff is disabled under either the ADA and Michigan law presents a genuine issue of material fact.

SFCU also argues that Plaintiff cannot establish a *prima facie* case because she cannot show that she was "otherwise qualified for the position." SFCU says Plaintiff's history of excessive absenteeism, and the fact that she had five unpaid absences subject to disciplinary action, indicates that she was not qualified for the job. SFCU sets forth evidence establishing Plaintiff's numerous absences. Plaintiff counters that her performance appraisals show she was more than qualified for her position and none indicates that her attendance put her job in jeopardy. But, review of the evidence suggests otherwise.

Plaintiff's 2002 to 2003 performance review shows that she met all performance standards. Pl. Resp., Exh. 4. It is also noted that she recently began her head position and took on her new responsibilities well, but received four warnings for unpaid absences. *Id.* Plaintiff's 2003 to 2004 performance review says she met all performance standards, except in dependability and use of time where she needed improvement. Pl. Resp.,Exh. 5. While the review says she did an excellent job at being the MS head, it also noted she had two warnings for unpaid absences. *Id.* Plaintiff's 2004 to 2006 performance review again shows she met all performance standards, except in dependability and use of time. Pl. Resp., Exh. 6. Plaintiff worked well with her supervisor and the head teller to ensure efficiency of the office, but struggled in the attendance area and needed improvement; she received four warnings in 2004, two

reprimands in 2005, and an unpaid suspension in 2006 for excessive unpaid absences. *Id.* The absences which resulted in Plaintiff's termination occurred less than six months after the unpaid suspension. This evidence runs counter to Plaintiff's claim that her attendance did not affect her performance.

"An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." *Tyndall v. National Educ. Ctrs. Inc.*, 31 F.3d 209, 213 (4th Cir. 1994), cited with approval in *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998); see also *Brenneman v. Medcentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004) (finding plaintiff was "unqualified due to his inability to satisfy [the employer's] basic attendance requirements"). The ADA does not obligate employers "to tolerate erratic, unreliable attendance." *Waggoner v. Olin Corp*, 169 F.3d 481, 485 (7th Cir. 1999). Plaintiff cannot satisfy the second element of her *prima facie* case due to her poor attendance.

Likewise, Plaintiff failed to explain how she is so disabled that she qualifies for social security disability benefits, but is still qualified for her job. As the Supreme Court explained:

> [A]n ADA plaintiff cannot simply ignore her SSDI contention that she was too disabled to work. To survive a defendant's motion for summary judgment, she must explain why that SSDI contention is consistent with her ADA claim that she could "perform the essential functions" of her previous job, at least with "reasonable accommodation."

*Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 798 (1999).

Plaintiff's affidavit says that SFCU previously allowed her to go on part-time status and work a reduced schedule when her conditions flared up, until they were

9

under control and she was able to work full time again. However, she presents no evidence that she made a request for such accommodation on this occasion. Since she failed to propose an accommodation of her disability, for this reason also, Plaintiff has not met the second requirement that she be qualified to perform the essential functions of the job. See *Taylor v. Phoenixville Sch. Dist.*, 174 F.3d 142, 165 (3d Cir. 1999) (the burden remains on the employee to request an accommodation). She, therefore, fails to establish a *prima facie* case.

Even if Plaintiff could establish a *prima facie* case, SFCU had a legitimate non-discriminatory reason for terminating her, *i.e.*, her poor attendance. Plaintiff cannot demonstrate that this reason was a pretext for unlawful discrimination. Plaintiff says evidence that SFCU failed to follow its usual procedure of treating consecutive absences as one absence is evidence of pretext. However, the attendance policy specifically says "[c]onsecutive days of absenteeism for the same reason may be considered one instance of absenteeism and treated as such under this policy." The policy allows, but does not require, SFCU to treat consecutive absences for the same reason as one absence. Plaintiff offers no evidence that SFCU applied the policy in a discriminatory fashion with respect to her and other non-disabled employees. Plaintiff's ADA discrimination claim fails.

**B.     Retaliation**

The ADA forbids retaliation for any action protected by the ADA. 42 U.S.C. § 12203(a) (2005). In order to establish a *prima facie* case of retaliation under the ADA or the PWDCRA, the plaintiff must prove that: (1) she "engaged in protected activity;" (2) her employer was aware of the protected activity; (3) she suffered an adverse

employment action; and (4) "a causal connection exists between the protected activity and the adverse employment action." *Walborn v. Erie County Care Facility*, 150 F.3d 584, 588-89 (6th Cir. 1998).

After a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant "'to articulate some legitimate, nondiscriminatory reason' for its actions." *Gribcheck v. Runyon*, 245 F.3d 547, 551 (6th Cir. 2001) (quoting *McDonnell Douglas,* 411 U.S. at 802). If the defendant succeeds in doing so, the plaintiff must demonstrate "that a reasonable jury could find by a preponderance of the evidence that the defendant's stated reasons are pretextual." *Id.* at 552 (citing *Wrenn v. Gould*, 808 F.2d 493, 501 (6th Cir. 1987)).

SFCU says that when Plaintiff complained about her co-workers calling in sick, she was not engaged in protected activity, and therefore that complaint cannot support her retaliation claim. Plaintiff contends that when she made the complaint, she believed her co-workers' conduct violated the ADA, and it was protected activity.

42 U.S.C. § 12203 (a) prohibits "discriminat[ion] against any individual" who "opposed any act or practice" made unlawful by the ADA or because such individual has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the ADA. Because the ADA's anti-retaliation provision is similar to that of Title VII, the retaliation standard enunciated in *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) applies to retaliation claims under the ADA and serves as a template against which ADA retaliation claims may be judged.

Title VII prohibits retaliation against an employee "because he has opposed any

practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). These two clauses are known as the "opposition clause" and the "participation clause." *Crawford v. Metropolitan Government of Nashville and Davidson County, Tenn.*, 129 S.Ct. 846, 850, 172 L. Ed. 2d 650 (2009). A claim is brought under the opposition clause when it involves opposing a violation of Title VII. *Booker v. Brown & Williamson Tobacco Co.*, Inc., 879 F.2d 1304, 1312 (6th Cir. 1989).

Types of activity which constitutes opposition includes: "Complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer, e.g., former employers, union, and co-workers." *Johnson v. University of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000).

In construing the opposition clause, the Sixth Circuit explained that the challenged activity need not actually violate Title VII. *Id.* at 580. Instead, the plaintiff must only have a reasonable belief that the defendant has committed an unlawful employment practice. *Id.* Applying that standard here, the Court finds the complaint was protected activity. See *Keever v. City of Middletown*, 145 F.3d 809, 813 (6th Cir.) , cert. denied, 525 U.S. 963 (1998) (considering claim for disability harassment without disavowing that such a claim exists). The crux of Plaintiff's complaint was that she was being harassed by her co-workers in retaliation for taking off work due to her disability. She specifically stated in the complaint: "[d]o [sic] to this harassment and retaliation it

has aggravated my illness and completely disrupted the branch. . . This was a violation of our union contract and handbook." Def. Mot., Exh. N.  This was sufficient notice of a possible claim of disability harassment.  Plaintiff has met the first two prongs of her *prima facie* case.

To establish the requisite causal link, Plaintiff "must present evidence sufficient to raise the inference that [her] protected activity was the likely reason for the adverse action." *Brown v. Chase Brass*,14 Fed. Appx. 482; 2001 U.S. App. LEXIS 15726 at *7 (quoting *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 797 (9th Cir. 1982)).  Temporal proximity alone is insufficient to establish a causal connection for a retaliation claim. *Little v. B.P. Exploration & Oil Co.*, 265 F.3d 357, 363-64 (6th Cir. 2001).  But "temporal proximity . . . with other evidence of retaliatory conduct [may be] sufficient to establish a causal connection. *Id.* at 364.

Plaintiff alleges she was terminated merely three weeks after she made her co-worker harassment complaint.  She adds that throughout her employment, any time she was absent for consecutive days due to her condition, SFCU treated them as one occurrence under the attendance policy. See Pl. Resp., Exh. 14.  This contention is supported by her attendance records.  On this occasion, however, SFCU treated each of the three consecutive absences as separate occurrences.  Lastly, Plaintiff argues that the meeting with Yax regarding her complaint turned into a discussion regarding her medical condition and attendance rather than the behavior of her co-workers, and that his investigation was inadequate.  Plaintiff adds that Yax did not interview the two witnesses she listed in her complaint, to whom the co-workers allegedly admitted they conspired to call in.  Defendant presents no evidence that these witnesses were

interviewed.

Plaintiff contends (1) the timing of her termination in relation to her harassment complaint, (2) the procedural irregularities related to the treatment of her absences, and (3) the fact that she was the focus of the investigation into her complaint, undermine the credibility of SFCU's proffered reason and create a question of fact as to whether SFCU impermissibly retaliated against her. The Court agrees. Plaintiff has demonstrated enough evidence for a reasonable juror to find for her on this issue.

## IV.   CONCLUSION

The Court **GRANTS** the Motion for Summary Judgment on Plaintiff's ADA and PWDCRA discrimination claims and **DENIES** the Motion on the ADA and PWDCRA retaliation claims.

**IT IS ORDERED**.

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  December 1, 2009

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on December 1, 2009.

s/Linda Vertriest
Deputy Clerk